## THE UNITED STATES *v.* JUDGE PETERS.

——————

AT the last term Gideon Olmstead, in behalf of himself and Artimus White, Aquilla Rumsdale, and David Clark, moved the court for a *mandamus**\** to be directed to the honourable Richard Peters, judge of the district court of the United States for the Pennsylvania district, commanding him to order and direct an attachment or other proper process to issue to enforce obedience to the sentence of the said district court in a civil cause of admiralty and maritime jurisdiction, in which the said Gideon Olmstead and others were libellants, and Elizabeth Serjeant and Esther Waters were respondents. This motion was made upon a suggestion, supported by affidavit, that a copy of the sentence had been served upon the respondents, which they refused to obey; and that application had been made to the judge for an attachment, which he had refused to grant; whereupon a *mandamus nisi* was granted returnable to this term; when the judge made the following return:

The legislature of a state cannot annul the judgments, nor determine the jurisdiction, of the courts of the United States. The court of appeals in prize causes, erected by the continental congress, had power to revise and correct the sentences of the state courts of admiralty.

Although the claims of a state may be ultimately affected by the decision of a cause, yet if the state be not necessarily a defendant, the courts of the United States are bound to exercise jurisdiction.

* On Saturday, March 5th, 1808, upon the affidavit of Olmstead, a rule was granted that Judge Peters should show cause by the next Saturday, why a mandamus should not issue. On Saturday, March 12th, a letter was received by one of the counsel for Olmstead, from Judge Peters, acknowledging service of the rule; and stating that an act of the legislature of Pennsylvania had commanded the governor of that state to call out an armed force to prevent the execution of any process to enforce the performance of the sentence. That such being the state of things he should not direct process to issue unless he should be so ordered by this court; whereupon a *mandamus nisi* was granted, returnable at the next term.

" To the honourable the supreme court of the United States,

" The subscriber, judge of the district court of the United States in and for the district of Pennsylvania, in obedience to the *mandamus* issued by order of the supreme court in the case of Gideon Olmstead and others, libellants, against the surviving executrixes of the late David Rittenhouse, Esq. and to the said district judge directed, begs leave to return,

" That the proceedings of the district court in the above cause, which are herewith transmitted, and respectfully submitted, will show the grounds of the judgment by the said court rendered. Every opportunity, through the whole course of these proceedings, was given to the parties to litigate the claim, or discuss questions, either on the merits or jurisdiction. Nor was any step taken, without due and timely notice.

" The answer of the respondents will show their objections to the claim of the libellants. This answer refers to an act of assembly of the state of Pennsylvania, passed the 26th day of February, 1801, which was not produced or brought under the legal notice of the court.

" No application for execution of the decree was made until within twelve or eighteen months past; nor has it been, till more recently, much pressed.

" By the suggestion filed by the respondents, their objections to the execution of the decree will appear. They have made an act of assembly of the state of Pennsylvania a part of their suggestion ; and thus, for the first time, during the pendency of the suit, brought this act under the judicial notice of the court. It is entitled " An act relating to the claim of this commonwealth against Elizabeth Serjeant and Esther Waters, surviving executrixes of David Rittenhouse, Esq. deceased, passed

April the second, 1803:" and to this act I pray leave to refer.

" This act, or any of its allegations, has no influence on my opinion. Let this opinion be erroneous or correct, a proceeding, in some of its parts, indecorous, and, in others, unjustifiable, can have no operation in rectifying supposed errors, or convincing my judgment. But from prudential, more than other motives, I deemed it best to avoid embroiling the government of the United States and that of Pennsylvania (if the latter government should choose so to do) on a question which has rested on my single opinion, so far as it is touched by my decree; and, under the influence of this sentiment, I have withheld the process required. If this be not considered a legal cause, it must be deemed a candid acknowledgment that I do not invariably obey a rigorous dictate of duty, or follow an inflexibly strict construction of law.

" I entertained a hope that a legislature succeeding that by which the act before mentioned was passed, would, under a more temperate view of the subject, have repealed it; and enabled, and directed the executive of the state, or some other authority, to put this case in a legal train of investigation: so that the final judgment and decree of the superior tribunal of the United States might have been, in a proper course, obtained; and thereby any erroneous opinion, or decree, given or made by me, might have been rectified (if any opinion or decree should have been found illegal or erroneous) in a manner more becoming the real dignity of a state, more suitable to the situation of those who execute the duties of a branch of the government of the United States, and more consistent with the good order and peace of the community. This hope was cherished by the proceedings of the legislature of Pennsylvania, in other cases wherein the state claimed interests. This expectation has been disappointed. There being no other legal mode of obtaining the decision of

the superior tribunal of the United States, (the only
jurisdiction by which the judgments of inferior
courts of the United States can be finally rectified or
judicially annulled,) I have thought it proper, and,
under all circumstances, fully justifiable, to obtain
that decision, by placing the case under the cogni-
sance of your honourable court, in its present form.

" On the merits and justice of the claim of the
libellants, I have no doubt; but remain of the
same opinion I have mentioned in my decree.

" As to the jurisdiction; I have never conceived
that the allegations on this point, contained in the
act of assembly last mentioned, had legal founda-
tion.    It is well known to your honourable court,
that third persons claiming interests *in pais*, cannot,
by such claims, constitute themselves, or be judi-
dially considered, parties in suits pending in the
names of others.   Nor does there now exist any
legal mode of interpleading, or compelling states to
become parties to suits in the courts of the United
States. · Yet if your honourable court shall be of
opinion that the objections to jurisdiction are re-
levant, I shall, agreeably to my duty, continue to.
withhold any farther proceeding.   But if, on the
other hand, a peremptory direction to execute the de-
cree shall be the consequence of your deliberations,
having now the whole case before you, there can be
no order or direction, which it is in my legal ob-
ligation to obey, to which (impelled by a sense of
justice, however I may regret the circumstance, as
it respects the parties respondents, or other conse-
quences which may flow from it) I shall more cheer-
fully submit. ·

                                " RICHARD PETERS.

" *Philadelphia, July* 18*th*, 1808."

The facts as they appear in the record and docu-
ments referred to by the judge, in the above answer,
were in substance as follows.

Gideon  Olmstead, Artimus White, Aquilla

Rumsdale and David Clark, citizens and inhabitants of the state of Connecticut, were, during the revolutionary war, captured by the British and carried to Jamaica, where they were put on board the sloop Active to assist as mariners in navigating the sloop to New-York, then in possession of the British, with a cargo of supplies for the fleets and armies of Great Britain. During which voyage, about the 6th of September, 1778, they rose upon the master and crew of the sloop, confined them to the cabin, took the command of the vessel and steered for Egg Harbour, in the state of New-Jersey. On the 8th of September, when in sight of that harbour they were pursued, and forcibly taken possession of by Captain Thomas Houston, commander of the armed brig *Convention*, belonging to the state of Pennsylvania, and, on the 15th of September, brought into the port of Philadelphia; when Houston libelled the vessel as prize to the *Convention*. A claim was interposed by Captain James Josiah, master of the American privateer *Le Gerard*, who claimed a share of the capture as having been in sight and by agreement cruising in concert with the *Convention*. A claim was also interposed by Olmstead and others for the whole vessel and cargo, as being their exclusive prize. The state court of admiralty, however, adjudged them only one fourth part, and decreed the residue to be divided between the state and the owners of the privateer, and the officers and crews of the *Convention* and the *Le Gerard*. From this sentence Olmstead and others appealed to the court of commissioners of appeals in prize causes for the United States of America, where, on the 15th of December, 1778, the sentence of the state court was reversed, and it was ordered and adjudged that the vessel and cargo should be condemned as lawful prize for the use of the appellants, Olmstead and others, and that the marshal should sell the same, and pay the net proceeds to them or their agent or attorney. Upon receipt of a copy of this sentence, the court of admiralty made the following order:

THE U. S.
v.
PETERS.

"Thomas Houston, Esq. et al.,
appellees,
ads.
"Gideon Olmstead, Artimus
White, Aquilla Rumsdale,
and David Clark, appellants,
claimants of the sloop Ac-
tive and her cargo.

"In the court of
Admiralty, for
the State of
Pennsylvania.

"The court, taking into consideration the decree of the court of appeals in this cause, reversing the judgment or sentence of this court in the same cause, and further decreeing a condemnation of the sloop Active, her tackle, apparel, furniture and cargo, as prize, &c. and that process of this court should issue for the sale of the said sloop, her cargo, &c. and for the distribution of the moneys arising from the said sale after deducting costs, to the claimants above named, their agent or attorney; after mature consideration are of opinion, that although the court of appeals have full authority to alter or set aside the decree of a judge of this court, yet that the finding of the jury in the cause does establish the facts in the cause without re-examination or appeal. And therefore the verdict of the jury still standing, and being in full force, this court cannot issue any process, or proceed in any manner whatsoever contradictory to the finding of the said jury. And therefore doth now decree, order and adjudge, that the marshal of this court be commanded to sell at public vendue at the highest price that can be gotten for the same, the said sloop or vessel called the Active, her tackle, apparel and furniture, and the goods, wares and merchandises laden and found on board her at the time of her capture, &c. and after deducting the costs and charges of the trial, condemnation and sale thereof, out of the moneys arising from the said sale, that he bring the residue thereof into court, there to remain ready to abide the further order of this court therein.

"*George Rose.*

"December 28th, 1778."

The finding of the jury, alluded to in the above order, was in these words:

".In the cause wherein Thomas Houston is libellant, and Olmstead and others first claimants, and James Josiah second claimant, we find as follows:

1-4th of the net proceeds of the sloop Active and her cargo to the first claimants.

3-4ths of the net proceeds of said sloop and her cargo to the libellant and to the second claimants, as per agreement between them.

" Nov. 4th, 1778."

The warrant which Judge Ross directed to be issued to the marshal to make sale of the vessel and cargo, in pursuance of the above order, and which was accordingly issued on the 28th of December, 1778, after reciting the proceedings in this court, and in the court of appeals, proceeds as follows : " This court therefore taking into consideration the premises, and being of opinion that consistent with the laws of this state it cannot carry into execution the whole of the said sentence of the honourable the court of appeals aforesaid : yet willing, so far as the said sentence appears legal, to carry it into effect, and to prevent, as far as possible, any injuries or losses which the parties to this cause, or either of them, may be liable to by the vessel and cargo continuing in their present situation, do therefore hereby command you forthwith to sell," &c. "and, after deducting the costs and charges, to bring the residue of the said moneys *into court* ready to abide the further order of this court." This warrant was made returnable at a court of admiralty to be holden at the judge's chambers, on the 7th of January, 1779.

Copies of the above order and warrant being produced, on the same 28th of December, 1778, before the court of appeals, it was moved, on the

part of the appellants, Olmstead and others, that process might issue to the marshal of the admiralty of Pennsylvania, commanding him to execute the decree of the court of appeals; and after argument the case was postponed for further argument until Monday, 4th of January, 1779, at 5 o'clock P. M. On which day at 8 o'clock A. M. the court of appeals being again convened at the pressing instance and request of the claimants Olmstead and others, it was moved and suggested by their advocates that notwithstanding the decree of the court of appeals, which had been transmitted to the court of admiralty, the judge of that court had appointed the hour of *nine* on that morning for the marshal to pay into court the money arising from the sale of the sloop Active and cargo; which suggestion was supported by the oath of the registrar of the admiralty; whereupon it was prayed that an injunction might issue from the court of appeals directed to the marshal of the court of admiralty, commanding him to keep the money in his hands until the further order of the court of appeals; which injunction was accordingly granted, reciting the sentence of the court of admiralty and its reversal; and the decree by the court of appeals; the refusal of the judge of the court of admiralty to cause that decree to be executed; and the motion to the court of appeals for a writ to the marshal commanding him to execute the same; the continuance of that motion to the 4th of January, 1779, at 5 o'clock P. M. and the appointment of the hour of 9 o'clock A. M. of the same day, by the special order of the judge of the court of admiralty, for the marshal to pay the money into that court, whereby the effect of the writ prayed for, if the court should grant it, would be eluded.

This injunction was served upon the marshal before he paid the money into the court of admiralty; but he disregarded it, and paid the money over to the judge, who gave a receipt for it.

" Whereupon the court (of appeals) declared and ordered to be entered on record, that as the judge and marshal of the court of admiralty of the state

of Pennsylvania had absolutely and respectively re-
fused obedience to the decree and writ regularly
made in and issued from this court, to which they
and each of them were and was bound to pay obe-
dience, this court being unwilling to enter upon
any proceedings for contempt, lest consequences
might ensue at this juncture dangerous to the public
peace of the United States, will not proceed further
in this affair, *nor hear any appeal*, until the autho-
rity of this court be so settled as to give full efficacy
to their decrees and process.

" Ordered that the register do prepare a state of
the proceedings had upon the decree of this court,
in the case of the sloop Active, in order that the
commissioners may lay the same before congress."

Upon the writ issued by the judge commanding
the marshal to sell the vessel and cargo, and bring
the proceeds into court to abide its further order,
the marshal, on the 4th of January, 1779, returned,
that in obedience to that writ he had deposited in
the court of admiralty 47,981*l.* 2*s.* 5*d.* Pennsylvania
currency, on account of the *cargo* of the prize sloop
Active; but that the sloop remained yet unsold.

The money was loaned to the United States, and
the loan-office certificates brought into court and de-
posited in the hands of the judge, who, on the 1st of
May, 1779, delivered to David Rittenhouse, trea-
surer of the state of Pennsylvania, fifty of the cer-
tificates, amounting to 11,496*l.* 9*s.* 9*d.* " being the
share or dividend of the state in right of the brig
Convention in and out of the prize sloop Active,
according to the verdict of the jury on the trial of
the said sloop Active in the admiralty court of that
state ;" at the same time taking a bond of indemnity
from Mr. Rittenhouse, by the name of " David Rit-
tenhouse, of the city of Philadelphia, gent." the con-
dition of which was that " Whereas the said George
Ross hath this day paid to the said David Ritten-
house, *treasurer of the state of Pennsylvania, for
the use of the said state*, the sum," &c. Now " if
he the said David Rittenhouse shall make repay-

THE U. S.
v
PETERS.

ment and restitution of the said sum of 11,496*l.* 9*s.* 9*d.* unto the said George Ross, his executors or administrators, in case he the said George Ross shall hereafter by due course of law be compelled to pay the same according to the decree of the court of appeals in the case of the said sloop Active; and if he the said David Rittenhouse shall and do in all things well and truly save harmless and indemnified at all times hereafter the said George Ross, his heirs, executors and administrators, and his and their lands and tenements, goods and chattels of and from all damages, actions and demands which may arise or happen, for or on account of his having paid the money aforesaid, then the above obligation to be void, or else to be and remain in full force and virtue."

The certificates were afterwards funded in the name of David Rittenhouse, and among his papers was found a list of the old loan-office certificates, and of the new funded stock, at the foot of which was written, in the hand writing of Mr. Rittenhouse, the following memorandum:

"Note. The above certificates will be the property of the state of Pennsylvania, when the state releases me from the bond I gave in 1778, to indemnify George Ross, Esq. judge of the admiralty, for paying the fifty original certificates into the state treasury as the state's share of the prize."

In the year 1801, the legislature of Pennsylvania passed an act requiring the treasurer to call upon the executrixes of Mr. Rittenhouse for the certificates of stock, and to give them a bond of indemnity, but they refused to deliver them up, being advised that they would not be safe in so doing.

On the 4th of January, 1803, the judge of the district court for the district of Pennsylvania, pronounced the following final decree in the cause:

"This is the long depending case of the sloop Active and cargo. It comes before me by libel

filed against the executors of the late Mr. Ritten-house, who received from George Ross, Esq. then judge of the state court of admiralty, the sums mentioned in the libel, which were invested in the certificates of stock as stated therein. Mr. Rittenhouse, on receiving these certificates, which were proceeds of the sales of the said sloop and cargo, gave a bond of indemnity to Mr. Ross, which is now offered, when payment of these proceeds is made, to be delivered up. The suit is instituted for the purpose of carrying into effect a decree of the court of appeals established under the old confederation, a copy whereof appears among the exhibits. In the answer it is alleged that the moneys were received for the state of Pennsylvania. In the replication this is denied. In a memorandum made by Mr. Rittenhouse, at the foot of the account exhibited, it appears that he intended to pay over these proceeds to the state, when indemnified. No such payment ever has been made, and the certificates and moneys are yet in the hands of the respondents.

" It appears to me that Mr. Rittenhouse considered himself, as I conceive he was, a stakeholder, liable to pay over the deposit to those lawfully entitled thereto. His executors conceive themselves in the same predicament, and have declined paying over the certificates and interest. No counsel have appeared, and requested to be heard on the part of the respondents, and I am left to judge from the libel, answer, replication and exhibits which contain the state of the facts. If I should be thought mistaken in the opinion I form on the subject, there is time and opportunity to appeal to a superior tribunal.

" I throw out of the case all circumstances not immediately within my present view of the duty I have to perform. I have nothing to do with the original question, that has been decided by the court of appeals; nor does it appear to me essential for me to determine with what intentions Mr. Rittenhouse received the certificates. The fact of the

certificates and interest being now in the hands of the respondents is granted by them in their answer. It has been determined by the supreme court of the United States that this court has power to effectuate the decrees of the late court of appeals in prize causes, and this court has, on several occasions, practised agreeably to that decision. There is no doubt in my mind (the authorities in the books being clear on this point) that the process and jurisdiction of this court will reach and extend over the proceeds of all ships, goods and articles taken as lawful prize, found within the district, and legally proceeded against therein. These proceeds are under the same legal disposition, and subject to the same responsibility, under whatever shape they may appear, as the original *thing* from which they were produced. It is conceded that the certificates and moneys in question are proceeds of the sloop and cargo in the libel mentioned. These were decreed to the libellants by the judgment of the late court of appeals. I am, therefore, of opinion, and accordingly decree, and finally adjudge and determine, that the certificates be transferred and delivered, and the interest moneys paid over by the respondents to the libellants, in execution of the judgment and decree of the court of appeals, as stated in the proceedings in this cause, with costs. I make it, however, a condition that the bond of indemnity be cancelled or delivered to the respondents, on their compliance with this decree.

" *Richard Peters.*

"January 14, 1803."

No further proceedings in this cause were had in the district court until the 18th of May, 1807, when, on motion of Mr. Lewis, in behalf of the libellants, Olmstead and others, the respondents were ruled to show cause by the next Friday why the decree pronounced in this cause should not be carried into execution; and the bond of indemnity referred to in the decree was filed in court ready to be delivered

up, or cancelled, on compliance with the decree by the respondents.

On the 29th of May, 1807, to which day the rule had been enlarged, the respondents appeared and suggested to the court,

That after making the decree in this case, to wit, on the second day of April, A. D. 1803, the general assembly of the commonwealth of Pennsylvania passed an act, which was then approved by the governor of the said commonwealth, in the following words: " An act relating to the claim of this commonwealth against Elizabeth Serjeant and Esther Waters, surviving executrixes of David Rittenhouse, Esq. deceased."

Whereas, by an act of congress for the erecting of tribunals competent to determine the propriety of captures during the late war between Great Britain and her then colonies, passed the 25th day of November, one thousand seven hundred and seventy-five, it is enacted, in the fourth section thereof as follows, viz. " That it be and is hereby recommended to the several legislatures in the United Colonies, as soon as possible to erect courts of justice, or give jurisdiction to the courts now in being for the purpose of determining concerning the captures to be made as aforesaid, and to provide that all trials in such case be had by a jury, under such qualifications as to the respective legislatures shall seem expedient;" and in the sixth section thereof as follows, viz. " That in all cases an appeal shall be allowed to the congress, or to such person or persons, as they shall appoint for the trial of appeals."

And whereas, by an act of the general assembly of Pennsylvania, passed the 9th of September, 1778, entitled, " An act for establishing a court of admiralty," appeals were allowed from the said court in all cases, unless from the determination or finding of the facts by a jury, which was under the provisions of that law to be without re-examination

or appeal : And whereas, by a resolution of congress of the 15th of January, 1780, it was, among other things, declared, " That trials in the court of appeals shall be according to the law of nations, and not by jury."

And whereas the British sloop *Active*, having been captured as prize on the high seas, in the month of September, 1778, and brought into the port of Philadelphia, and there libelled in the court of admiralty of the said state, held before George Ross, Esq. the then judge of the said court, on the 18th day of the said month of September: And whereas the libellants then and there against the said sloop Active, Gideon Urmstead or Olmstead, Artimus White, Aquilla Rumsdale and David Clark, who claimed the whole vessel and cargo as their exclusive prize; Thomas Houston, master of the brig Convention; a vessel of war belonging to Pennsylvania, who claimed a moiety of the said prize for the state of Pennsylvania, himself, and his crew; and James Josiah, master of the sloop *Gerard*, private vessel of war, who claimed one fourth part of the said prize for himself, his owners and crew: And whereas all the facts respecting the said capture being submitted to the said court of admiralty, and a jury then and there returned, empannelled and sworn, a general verdict was brought in by the said jury, which was confirmed by the court, whereby Gideon Olmstead, Artimus White, Aquilla Rumsdale and David Clark, became entitled to one fourth of the said prize; Thomas Houston, for himself and crew, became entitled to another fourth; the state of Pennsylvania, as owner of the vessel of war the *Convention*, to another fourth; and James Josiah, himself and owners and crew of the sloop *Gerard*, became entitled to the remaining one fourth part of the said prize: And whereas the said Gideon Olmstead, Artimus White, Aquilla Rumsdale and David Clark, being dissatisfied with the verdict and sentence aforesaid, did appeal from the said court of admiralty of Pennsylvania, unto the court or committee of appeals appointed as aforesaid under the

authority of congress, notwithstanding the recommendation of congress aforesaid, of the 25th day of November, 1775, for the appointment of courts of admiralty in each of the then United Colonies, did expressly provide that all trials respecting capture should be had by a jury, and under such qualifications as to the respective legislatures should seem expedient, and notwithstanding the court of appeals did decide not by a jury, but by the usage of nations, and notwithstanding the law for establishing the court of admiralty of Pennsylvania did expressly take away the right of appeal where the facts were found and determined by the intervention of a jury, and notwithstanding the state was authorized at the time to make such qualification or provision, taking away the right of appeal in jury cases, by virtue of the recommendation of congress aforesaid, which allowed and recommended the said courts of admiralty to be established with a jury under such qualifications as to the respective legislatures should seem expedient: And whereas the said court of appeals of the United States, on the 15th day of December, 1778, did reverse the sentence of the court of admiralty aforesaid, and did decree the whole of the said prize to the appellants: And whereas the judge of the court of admiralty, to wit, George Ross aforesaid, did refuse obedience to the decree of reversal, and did direct Matthew Clarkson, then marshal of the said court, to pay part of the proceeds of the said prize, to the amount of 11,496*l.* 9*s.* 9*d.* Pennsylvania currency, for the use of the state of Pennsylvania, into the treasury of the state of Pennsylvania, whereof David Rittenhouse was then treasurer, taking a bond of indemnity from the said David Rittenhouse, as treasurer as aforesaid, to save him the said George Ross, his executors, administrators, &c. harmless from the consequences of such payment, which bond is dated the 1st day of May, 1779: And whereas the said George Ross dying, suit was brought against his executors in the court of common pleas of Lancaster county, by and on the part of the appellants before named for the money whereunto they pre-

tended title by virtue of the decree aforesaid of the court of appeals reversing the sentence of the court of admiralty, whereof the said George Ross had been judge: And whereas it does not appear that the said David Rittenhouse had any notice or information, or was in any legal way apprized of, or made a party to, the said suit in the court of common pleas of Lancaster county, either in his personal capacity, or as treasurer of the state of Pennsylvania, so that judgment was obtained by default against the executors of the said George Ross, without any knowledge of the said David Rittenhouse, or his being able to take any measures on behalf of himself or the state of Pennsylvania to prevent the same: And whereas, in consequence of the judgment so obtained in the said court of common pleas of Lancaster county, against the executors of the said George Ross, the said executors brought suit against the said David Rittenhouse, which, in the year one thousand, seven hundred and ninety-two, in the term of April of the same year, was heard and determined in the supreme court of Pennsylvania, (on a case stated for the opinion of the court, after verdict taken for the plaintiff, subject to that opinion,) by Thomas M'Kean, chief justice, and others, the judges of the said court, who, among other things thereunto relating, did decree and determine that the reversal, as before mentioned, had and made in the court of appeals, was contrary to the provisions of the act of congress recommending the establishment of courts of admiralty, and of the general assembly of the state of Pennsylvania, in their act for the establishment of the said court, and was extrajudicial, erroneous and void, and that the court of common pleas of the county of Lancaster was incompetent to carry into effect the decree of the court of appeals, and that the judge of the court of admiralty aforesaid, George Ross, was not liable to an action in a court of law for distributing money according to his decree, as judge of the said court: And whereas at the second session of the third congress of the United States, held at the city of Philadelphia, in the month of

December, one thousand, seven hundred and ninety-three, it was proposed, as an amendment to the constitution of the United States, that the judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state, which, having been adopted by the requisite number of states, as appears by the communication to congress of the then president, John Adams, to this purpose, of January the eighth, one thousand, seven hundred and ninety-eight, did become a part of the constitution of the United States : And whereas, on the twenty-seventh day of May, one thousand, eight hundred and two, the said Gideon Olmstead, Artimus White, Aquilla Rumsdale and David Clark, by their attorney, William Lewis, Esq. did file a bill in the district court of the United States, at Philadelphia, for the district of Pennsylvania, before Richard Peters, judge of the said court, against Elizabeth Serjeant and Esther Waters, surviving executrixes of David Rittenhouse aforesaid, deceased, for the recovery of the moneys, with interest, so paid into the hands of the said David Rittenhouse by Matthew Clarkson, marshal of the admiralty court aforesaid, as proceeds of the prize, the brig Active so captured as aforesaid, and by the said David Rittenhouse and his executrixes aforesaid formerly and still retained : And whereas, in the answer of the said Elizabeth Serjeant and Esther Waters to the bill aforesaid, it sufficiently and substantially appears, that the said money was originally received by the said David Rittenhouse, and was by him detained, as treasurer of the commonwealth of Pennsylvania, which commonwealth was, and still is, interested in, and a claimant of, the same, under the decree of the said George Ross, as judge of the court of admiralty in manner as herein before stated : And whereas the said Richard Peters, judge of the said district court, on the bill, answer and replication so filed by and between the said Gideon Olmstead, Artimus White, Aquilla Rumsdale and David Clark, of the one part, against Eli-

zabeth Serjeant and Esther Waters, executrixes as aforesaid, did, on the fourteenth day of January, one thousand, eight hundred and three, proceed to decree as follows, viz. "This is the long depending case of the sloop Active and cargo," &c. All which legal proceedings herein before stated, will more fully and at large appear on reference to the records of the respective courts wherein the same were had : Therefore it hath become necessary for the general assembly of Pennsylvania, as guardians of the rights and interests of this commonwealth, and to prevent any future infringements on the same, to declare, that the jurisdiction entertained by the court or committee of appeals, over the decree of George Ross, as judge of the court of admiralty of Pennsylvania, in the suit where the claimants of the brig Active, as prize, were the libellants, as herein before stated, was illegally usurped and exercised, in contradiction to the just rights of Pennsylvania, and the proper jurisdiction of the court of admiralty established as aforesaid, under the authority of this state, and that the reversal of the decree of the said George Ross, in that suit, was null and void; that the jurisdiction entertained by Richard Peters, judge of the district court aforesaid, in the suit of Gideon Olmstead, Artimus White, Aquilla Rumsdale and David Clark against Elizabeth Serjeant and Esther Waters, surviving executrixes of David Rittenhouse, deceased, was illegally usurped and exercised; that the rights of this commonwealth, as a claimant, and as the party substantially interested, in the said suit, though apparent on the face of the proceedings, were unfairly passed over and set aside ; that the said David Rittenhouse was not and ought not to have been considered in the light of a mere stakeholder, but as the treasurer and agent of this commonwealth, and that the jurisdiction and decree of the said Richard Peters hereon were entertained and made in manifest opposition to, and violation of, the last amendment of the constitution of the United States herein before stated, and ought not to be supported or obeyed. Therefore,

Sect. 1. *Be it enacted by the senate and house of representatives of the commonwealth of Pennsylvania, in general assembly met, and it is hereby enacted by the authority of the same,* that the governor of this commonwealth be authorized, and he is hereby authorized and required, to direct the attorney-general of this commonwealth to apply without delay to Elizabeth Serjeant and Esther Waters, executrixes as aforesaid, and require them forthwith to pay into the treasury of this commonwealth, the moneys by them admitted to have been received in respect of the premises, in their answer to the bill so as aforesaid filed against them, in the district court of Pennsylvania, before Richard Peters, judge of the said court, without regard to the decree of the said Richard Peters herein, and in default thereof by the said Elizabeth Serjeant and Esther Waters, to direct the said attorney-general to bring suit in the name of the commonwealth, in the proper court of this commonwealth, against the said Elizabeth Serjeant and Esther Waters, for the moneys aforesaid, and proceed as speedily as the course of legal proceedings will permit, to enforce the recovery and payment thereof into the treasury of this commonwealth.

Sect. 2. *And be it further enacted by the authority aforesaid,* that the governor of this commonwealth be authorized and required, and he is hereby authorized and required, to protect the just rights of the state, in respect of the premises, by any further means and measures that he may deem necessary for the purpose, and also to protect the persons and properties of the said Elizabeth Serjeant and Esther Waters from any process whatever issued out of any-federal court in consequence of their obedience to the requisition, so as aforesaid directed to be made to them by the attorney-general of this commonwealth, and in the name of this commonwealth to give to the said Elizabeth Serjeant and Esther Waters a sufficient instrument of indemnification, in case of their payment of the moneys aforesaid, in compliance with this act, without suit brought

THE U. S.
v.
PETERS.

THE U. S.
v.
PETERS.

against them on the part of this commonwealth for the recovery of the same.

Simon Snyder, speaker of the house of representatives.

Robert Whitehill, speaker of the senate.

Approved, April 2, 1803.

Thomas M'Kean, governor of the commonwealth of Pennsylvania.

That they, the defendants, being required by proper authority to pay into the treasury of the said commonwealth the moneys admitted to have been received as executrixes of David Rittenhouse, Esq. in manner aforesaid, did, on the 19th day of July, 1803, transfer to the treasurer of the commonwealth the certificates of stock abovementioned, and on the 29th of July, 1803, pay into the treasury of the commonwealth the moneys by them received as aforesaid, in obedience to the said act of the general assembly, and to the requisition made under it.

The defendants respectfully further suggest, that the said certificates and money were received by their said testator, as the treasurer and officer of the said commonwealth, as appears by the bond of the said David Rittenhouse, given on the receipt thereof, filed in this court by the libellants, the 22d of May inst.; and that the same came to their hands, as his representatives, after such receipt: And, it being expressly insisted by the said act of the general assembly, that the said commonwealth had and has a right to the said certificates and money, and these defendants having, as aforesaid, obeyed the requisition of the said act, these defendants suggest that the said decree of this honourable court ought not to be executed, nor any process issued thereupon against them.

The defendants respectfully further suggest that the said decree of this honourable court was pronounced, so far as respects the claims, rights and interests of the said commonwealth of Pennsylvania, *ex parte*, and without jurisdiction.

The U. S.
v.
Peters.

*John Serjeant, attorney for defendants.*

After this suggestion, nothing appears to have been done until the application to this court at February term, 1808, when the motion was made for a rule on the judge to show cause why a *mandamus* should not issue commanding him to issue an *attachment*, or other proper process, to enforce obedience to his sentence, as before mentioned.

At this term, *Rodney*, (*attorney-general*,) *Lewis*, and *F. S. Key*, of counsel for *Olmstead and others*, submitted the return of the *mandamus* to the consideration of the court without argument.

*February 20.*

MARSHALL, Ch. J. delivered the opinion of the court as follows:

With great attention, and with serious concern, the court has considered the return made by the judge for the district of Pennsylvania to the *mandamus* directing him to execute the sentence pronounced by him in the case of *Gideon Olmstead and others* v. *Rittenhouse's Executrixes*, or to show cause for not so doing. The cause shown is an act of the legislature of Pennsylvania, passed subsequent to the rendition of his sentence. This act authorizes and requires the governor to demand, for the use of the state of Pennsylvania, the money which had been decreed to Gideon Olmstead and others; and which was in the hands of the executrixes of David Rittenhouse; and, in default of payment, to direct the attorney-general to institute a suit for the recovery thereof. This act further authorizes and requires the governor to use any further means he

THE U. S.
v.
PETERS.

may think necessary for the protection of what it denominates "the just rights of the state," and also to protect the persons and properties of the said executrixes of David Rittenhouse, deceased, against any process whatever, issued out of any federal court in consequence of their obedience to the requisition of the said act.

If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery; and the nation is deprived of the means of enforcing its laws by the instrumentality of its own tribunals. So fatal a result must be deprecated by all; and the people of Pennsylvania, not less than the citizens of every other state, must feel a deep interest in resisting principles so destructive of the union, and in averting consequences so fatal to themselves.

The act in question does not, in terms, assert the universal right of the state to interpose in every case whatever; but assigns, as a motive for its interposition in this particular case, that the sentence, the execution of which it prohibits, was rendered in a cause over which the federal courts have no jurisdiction.

If the ultimate right to determine the jurisdiction of the courts of the union is placed by the constitution in the several state legislatures, then this act concludes the subject; but if that power necessarily resides in the supreme judicial tribunal of the nation, then the jurisdiction of the district court of Pennsylvania, over the case in which that jurisdiction was exercised, ought to be most deliberately examined; and the act of Pennsylvania, with whatever respect it may be considered, cannot be permitted to prejudice the question.

In the early part of the war between the United States and Great Britain, Gideon Olmstead and

others, citizens of Connecticut, who say they had
been carried to Jamaica as prisoners, were employ-
ed as part of the crew of the sloop Active, bound
from Jamaica to New-York, and laden with a cargo
for the use of the British army in that place. On
the voyage they seized the vessel, confined the cap-
tain, and sailed for Egg Harbour. In sight of that
place, the Active was captured by the *Convention*,
an armed ship belonging to the state of Pennsylva-
nia, brought into port, libelled and condemned as
prize to the captors. From this sentence Gideon
Olmstead and others, who claimed the vessel and
cargo, appealed to the court of appeals established
by congress, by which tribunal the sentence of con-
demnation was reversed, the Active and her cargo
condemned as prize to the claimants, and process
was directed to issue out of the court of admiralty,
commanding the marshal of that court to sell the
said vessel and cargo, and to pay the net proceeds
to the claimants.

The mandate of the appellate court was produced
in the inferior court, the judge of which admitted
the general jurisdiction of the court established by
congress, as an appellate court, but denied its power
to control the verdict of a jury which had been ren-
dered in favour of the captors, the officers and crew
of the *Convention;* and therefore refused obedience
to the mandate: but directed the marshal to make
the sale, and, after deducting charges, to bring the
residue of the money into court, subject to its future
order.

The claimants then applied to the judges of ap-
peals, for an injunction to prohibit the marshal from
paying the money, arising from the sales, into the
court of admiralty; which was awarded, and served
upon him: in contempt of which, on the 4th of
January, 1778, he paid the money to the judge, who
acknowledged the receipt thereof at the foot of the
marshal's return.

On the 1st of May, 1799, George Ross, the judge

of the court of admiralty, delivered to David Rittenhouse, who was then treasurer of the state, of Pennsylvania, the sum of 11,496*l.* 9*s.* 9*d.* in loan-office certificates; which was the proportion of the prize money to which that state would have been entitled, had the sentence of the court of admiralty remained in force. On the same day, David Rittenhouse executed a bond of indemnity to George Ross, in which, after reciting that the money was paid to him for the use of the state of Pennsylvania, he binds himself to repay the same, should the said George Ross be thereafter compelled, by due course of law, to pay that sum according to the decree of the court of appeals.

These loan-office certificates were in the name of Matthew Clarkson, who was marshal of the court of admiralty, and were dated the 6th of November, 1778. Indents were issued on them to David Rittenhouse, and the whole principal and interest were afterwards funded by him, in his own name, under the act of congress making provision for the debt of the United States.

Among the papers of David Rittenhouse was a memorandum, made by himself at the foot of a list of the certificates mentioned above, in these words: " Note. The above certificates will be the property of the state of Pennsylvania, when the state releases me from the bond I gave in 1778, to indemnify George Ross, Esq. judge of the admiralty, for paying the 50 original certificates into the treasury, as the state's share of the prize."

The state did not release David Rittenhouse from the bond mentioned in this memorandum. These certificates remained in the private possession of David Rittenhouse, who drew the interest on them during his life, and after his death they remained in possession of his representatives; against whom the libel in this case was filed, for the purpose of carrying into execution the decree of the court of appeals.

·While this suit was depending, the state óf Pennsylvania forbore to assert its title, and, in January, 1803, the court decreed in favour of the libellants; soon after which, the legislature passed the act which has been stated.·

It is contended that the federal courts were deprived of jurisdiction, in this cause, by that amendment of the constitution which exempts states from being sued in those courts by individuals. This amendment declares, " that the judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

The right of a state to assert, as plaintiff, any interest it may have in a subject, which forms the matter of controversy between individuals, in one of the courts of the United States, is not affected by this amendment; nor can it be so construed as to oust the court of its jurisdiction, should such claim be suggested. The amendment simply provides, that no suit shall be commenced or prosecuted against a state. The state cannot be made a defendant to a suit brought by an individual; but it remains the duty of the courts of the United States to decide all cases brought before them by citizens of one state against citizens of a different state, where a state is not necessarily a defendant. In this case, the suit was not instituted against the state or its treasurer, but against the executrixes of David Rittenhouse, for the proceeds of a vessel condemned in the court of admiralty, which were admitted to be in their possession. If these proceeds had been the actual property of Pennsylvania, however wrongfully acquired, the disclosure of that fact would have presented a case on which it was unnecessary to give an opinion; but it certainly can never be alleged, that a mere suggestion of title in a state to property, in possession of an individual, must arrest the proceedings of the court, and prevent their

looking into the suggestion, and examining the validity of the title.

If the suggestion in this case be examined, it is deemed perfectly clear that no title whatever to the certificates in question was vested in the state of Pennsylvani

By the highest judicial authority of the nation it has been long since decided, that the court of appeals erected by congress had full authority to revise and correct the sentences of the courts of admiralty of the several states, in prize causes. That question, therefore, is at rest. Consequently, the decision of the court of appeals in this case annulled the sentence of the court of admiralty, and extinguished the interest of the state of Pennsylvania in the *Active* and her cargo, which was acquired by that sentence. The full right to that property was immediately vested in the claimants, who might rightfully pursue it, into whosesoever hands it might come. These certificates, in the hands, first, of Matthew Clarkson, the marshal, and afterwards of George Ross, the judge, of the court of admiralty, were the absolute property of the claimants. Nor did they change their character on coming into the possession of David Rittenhouse.

Although Mr. Rittenhouse was treasurer of the state of Pennsylvania, and the bond of indemnity which he executed states the money to have been paid to him for the use of the state of Pennsylvania, it is apparent that he held them in his own right, until he should be completely indemnified by the state. The evidence to this point is conclusive. The original certificates do not appear to have been deposited in the state treasury, to have been designated in any manner as the property of the state, or to have been delivered over to the successor of David Rittenhouse. They remained in his possession. The indents, issued upon them for interest, were drawn by David Rittenhouse, and preserved with the original certificates. When funded as

part of the debt of the United States, they were
funded by David Rittenhouse, and the interest was
drawn by him. The note made by himself at the
foot of the list, which he preserved, as explanatory
of the whole transaction, demonstrates that he held
the certificates as security against the bond he had
executed to George Ross; and that bond was obli-
gatory, not on the state of Pennsylvania, but on
David Rittenhouse, in his private capacity.

THE U. S.
v.
PETERS.

These circumstances demonstrate, beyond the
possibility of doubt, that the property, which repre-
sented the Active and her cargo, was in possession,
not of the state of Pennsylvania, but of David Rit-
tenhouse as an individual; after whose death it pass-
ed, like other property, to his representatives.

Since, then, the state of Pennsylvania had neither
possession of, nor right to, the property on which
the sentence of the district court was pronounced,
and since the suit was neither commenced nor pro-
secuted against that state, there remains no pretext
for the allegation that the case is within that amend-
ment of the constitution which has been cited; and,
consequently, the state of Pennsylvania can possess
no constitutional right to resist the legal process
which may be directed in this cause.

It will be readily conceived that the order which
this court is enjoined to make by the high obliga-
tions of duty and of law, is not made without ex-
treme regret at the necessity which has induced the
application. But it is a solemn duty, and therefore
must be performed. *A peremptory mandamus must
be awarded.*