James G. DIETZ, Irma Hunter Brown, Jerry Jewell, William Walker, William Townsend, Ben McGhee, Dexter Booth, Individually and in their Representative capacity, Plaintiffs,

v.

STATE OF ARKANSAS: Bill Clinton, Governor, in his official capacity; The Arkansas General Assembly, each member thereof not a plaintiff herein, in his official capacity, Defendants.

No. LR-C-89-175.

United States District Court, E.D. Arkansas, W.D.

March 31, 1989.

John T. Harmon and Darrell F. Brown, Little Rock, Ark., for plaintiffs.

Steve Clark, Atty. Gen., State of Ark., and Jeffrey A. Bell, Ass't Atty. Gen., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

The plaintiffs, with two exceptions, are black members of the Arkansas Legislature. They bring this suit to invalidate Amendment 44 to the Arkansas Constitution. Amendment 44 reads as follows:

**§ 1. Action by general assembly to protect states' rights.**

From and after the Adoption of this Amendment, the General Assembly of the State of Arkansas shall take appropriate action and pass laws opposing in every Constitutional manner the Un–Constitutional desegregation decisions of May 17, 1954 and May 31, 1955 of the United States Supreme Court, including interposing the sovereignty of the State of Arkansas to the end of nullification of these and all deliberate, palpable and dangerous invasions of or encroachments upon rights and powers not delegated to the United States nor prohibited to the States by the Constitution of the United States and Amendments thereto, and those rights and powers reserved to the States and to the People thereof by any department, commission, officer, or employee of such department or commission of the Government of the United States, or of any government of any Nation or Federation of Nations acting upon the apparent authority granted them by or assumed by them from the Government of the United States. Said opposition shall continue steadfast until such time as such Un–Constitutional invasions or encroachments shall have abated or shall have been rectified, or the same shall be transformed into an Amendment to the Constitution of the United States and adopted by action of three-fourths of the States as provided therein.

**§ 2. Statutes for administration and enforcement of amendment—Appropriations.**

The General Assembly shall enact laws to insure the administration and enforcement of the spirit and letter of this Amendment; and shall appropriate adequate funds to effect the same, including a proportionate share of such expenses as may be necessary for the maintenance of regional committees created among the States for the preservation of rights belonging to the states and the people thereof.

**§ 3. Regulation of health, morals, education, marriage and good order.**

The General Assembly shall enact such laws under the Police Powers reserved to the States as may be necessary to regulate health, morals, education, marriage, good order and to insure the domestic tranquility of the citizens of the State of Arkansas.

**§ 4. Public officers and employees— No immunity for violation of laws enacted under amendment—Forfeiture of office for violations.**

No public official or employee of the State of Arkansas or of any political subdivision thereof shall have immunity from arrest, prosecution and trial for the violation of such penal laws as the General Assembly shall provide for the willful failure and refusal to carry out the clear mandates of this Amendment; and in addition to the penalties provided for by the General Assembly, shall automatically forfeit his or her office.

■ Since the defendants concede that this amendment violates the Supremacy Clause of the United States Constitution, art. VI, clauses 2, 3, there is no reason to prolong this litigation.[1]   Amendment 44

---

**1.** Governor Clinton wrote to Attorney General Clark as follows:

I am requesting you to represent me in this matter and to file a response which admits that Amendment 44 is in violation of the Supremacy Clause to the United States Constitu-

tion and should be declared null and void without any legal force or effect. (Exhibit 3 to Complaint).

Both the Arkansas Senate and House of Representatives passed identical resolutions as follows:

was the product of the demagoguery that followed the Supreme Court's decision in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). In the hysteria that followed these decisions fanned by Arkansas office holders and those who aspired to hold office, the people of Arkansas in the 1956 general election adopted this amendment by a vote of 185,374 to 146,064.

The intemperate text represents a reckless defiance of the rule of law. It is contrary to every decision rendered by the Supreme Court, even one written by such an advocate of states rights as Chief Justice Roger Taney, author of the Dred Scott decision.[2] The great expositor of the Supremacy Clause, however, was Chief Justice John Marshall, who wrote in *United States v. Peters,* 5 Cranch 115, 3 L.Ed. 53 (1809): "If the legislatures of the several states may, at will, annul the judgments of the Courts of the United States and destroy the rights under those judgments, the Constitution itself becomes a solemn mockery." *Id.,* 5 Cranch at 136.

■ Any governor or legislator who defies the United States Constitution defies his solemn oath. If a governor had such power, in the words of Chief Justice Hughes, "[T]he fiat of a State Governor, and not the Constitution of the United States, would be the supreme law of the land." *Sterling v. Constantin,* 287 U.S. 378, 397–98, 53 S.Ct. 190, 195, 77 L.Ed. 375 (1932).

Yet this is exactly what Amendment 44 commands officials of the State of Arkansas to do—to break the solemn oath required under article VI, clause 3. As justification the amendment propounds the spurious doctrine of nullification. When John

C. Calhoun attempted to give viability to this theory, said to be his brainchild, by preventing the federal government from collecting a tariff in the State of South Carolina, President Andrew Jackson threatened to have him tried for treason.[3] The doctrine of nullification has attracted little attention since 1833 and none since Appomatox, except in Amendment 44.

The Amendment is specifically directed at the two *Brown* decisions, *supra,* which are described as "the Un–Constitutional desegregation decisions of May 17, 1954 and May 31, 1955." The author of Amendment 44 may take pride in one accomplishment. In this one sentence he formulated a legal oxymoron which may never be surpassed. In *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (1803), a unanimous Court held that the United States Constitution is "the fundamental and paramount law of the nation." Chief Justice Marshall further wrote in this most famous of all Supreme Court opinions, "It is emphatically the province and duty of the judicial department to say what the law is."

When Governor Faubus flouted two federal court orders by calling out the Arkansas National Guard on September 4, 1957 to prevent nine black students from entering Central High School, he was following not only the letter but also the spirit of this amendment. His action was followed by President Eisenhower's dispatch of the 101st Airborn to enforce the court orders.

In the litigation that followed these dramatic events, the Supreme Court made it clear why President Eisenhower's action to execute the court orders was necessary. "This decision [*Marbury v. Madison, supra*] declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by

---

That the Attorney General of the State of Arkansas is hereby requested to admit the unconstitutionality of Amendment 44 and seek an early resolution of the lawsuit. (Exhibits 1 and 2 to Complaint).

**2.** In *Ableman v. Booth,* 21 How. 506, 524, 16 L.Ed. 169 (1859) he wrote in reference to article VI, clause 3 that the requirement of clause 3 that the members of the state legislature and all executive and judicial officers of the several

states take an oath to support the Constitution reflected the framers' "anxiety to preserve it [the Constitution] in full force in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State. . . ."

**3.** Letter from Jackson to Joel R. Poinsett dated December 9, 1832, quoted in G. Van Deusen, *The Jacksonian Era 1828–1832,* p. 74, note 8 (1959).

this Court and the Country as a permanent and indispensable feature of our constitutional system. It follows that the interpretation of the Fourteenth Amendment enunciated by the Court in the *Brown* case is the supreme law of the land and Art. VI of the Constitution makes it of binding effect on the States 'any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5 (1958).

Amendment 44 directly and flagrantly challenges the above principles, which are the bedrock on which this republic was founded. They are the principles under which we have flourished—that the rule of law prevails over the rule of men. It was courageously defended long before *Marbury* by great English jurists such as Chief Justice Edward Coke. At the risk of losing his head, Coke told a furious Stuart king that even he "was under God and the Laws."[4]

Judgment is rendered for plaintiff on the complaint filed herein. Amendment 44 is stricken from the Arkansas Constitution. I hold this amendment to be unconstitutional under the Supremacy Clause of the United States Constitution, Article VI, clauses 2, 3, and void *ab initio*. In view of my holding, no further relief is indicated.

---

**4.** Catherine Drinker Bowen, *The Lion and the Throne, The Life and Times of Sir Edward Coke,* p. 305 (1957).