ORDER

MICHAEL K. RANDOLPH, Presiding Justice.
This matter is before the en banc Court on the Appellant’s Motion for an Entry of Judgment. In Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 192 L.Ed.2d 609 (June 26, 2015), the United States Supreme Court recently held that (1) states are required to license a marriage between two people of the same sex, and (2) states are required to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out of state. Based on Oberge-fell, Appellant has moved this Court to render judgment in Appellant’s favor and asks this Court to instruct the chancery court to recognize subject-matter jurisdiction of the divorce action.
In response, the State of Mississippi confessed the Appellant’s motion, stating that the relief sought .is “consistent, with the United States Supreme Court’s decision in Obergefell” and that Appellant’s motion “should be granted.” The State also confessed that the trial court’s decision “should be reversed .., and remanded for further proceedings.”
We find that no contested issues remain for resolution and that the motion should be granted.
IT IS THEREFORE ORDERED that the Motion for an Entry of Judgment in *188 favor of the Appellant is granted. The judgment of the Chancery Court of Desoto County is reversed, and this matter is remanded for further proceedings. All costs are assessed to the State.
SO ORDERED.
/s/ Michael K Randolph
MICHAEL K. RANDOLPH, PRESID-
ING JUSTICE
TO AGREE: WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND PIERCE, JJ.
PIERCE, J., AGREEING WITH SEPARATE WRITTEN STATEMENT JOINED BY CHANDLER, J.
DICKINSON, P.J., OBJECTS WITH SEPARATE WRITTEN STATEMENT JOINED BY COLEMAN, J.
KING, J., OBJECTS WITH SEPARATE WRITTEN STATEMENT JOINED BY KITCHENS, J.
COLEMAN, J., OBJECTS WITH SEPARATE WRITTEN STATEMENT JOINED BY DICKINSON, P. J.
PIERCE, Justice,
Agreeing With the Order With Separate Written Statement:
¶ 1. The oath of office which all members of the Mississippi Supreme Court must take requires each of us to “solemnly swear (or affirm) that I will administer justice ... that I will faithfully and impartially discharge and perform all of the duties incumbent upon me ... agreeably to the Constitution of the United States_” Miss. Const, art. 6, § 155.
¶2. It is elementary that the United States Supreme Court has the final word on constitutional interpretations of the United States Constitution. In Obergefell v. Hodges, 576 U.S. -, 135 S.Ct. 2584, 2602, 192 L,Ed.2d. 609 (2015), the United States Supreme Court held “[t]he right of same-sex couples to marry that is part of liberty promised by the Fourteenth Amendment is derived, too, from that Amendment’s guarantee of the equal protection of the laws. The Due Process Clause and the Equal Protection Clause are connected....”
¶ 3. Justice Coleman writes, and Presiding Justice Dickinson agrees, that it is a violation of the above oath to recognize the majority holding of the United States Supreme Court in Obergefell. I do not agree. In fact, I believe the opposite to be true.
¶ 4. Marbury v. Madison established the United States Supreme Court’s power of judicial review, giving the Supreme Court the power to declare any laws passed by Congress as unconstitutional. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). In Marbury, Chief Justice Marshall stated, “[i]t is emphatically the province and duty of the judicial department to say what the law is.” Id. at 177. Since then, it has been accepted and well-established in this nation that the “Supreme Court is the ultimate interpreter of the Constitution.” Baker v. Carr, 369 U.S. 186, 211, 82 act 691, 7 L.Ed.2d 663 (1962). In Obergefell, the Supreme Court has interpreted that the Fourteenth Amendment of the United States Constitution provides same-sex couples the right to marry. We are bound by the Supreme Court’s interpretation of the Constitution because federal law is the “supreme law of the land.” U.S. Const, art. VI, cl. 2.
¶ 5. Justice Coleman cites Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1399, 2 L.Ed.2d (1958), in which the Supreme Court held that the Arkansas school board and superintendent were not excused from implementing a desegregation program just because the governor and legislature took steps to prevent integration, which they said, created a hostile environment for the school system and community. *189 The Court rejected the state’s attempt to nullify the Brown decision but furthered its opinion to discuss the basic premise that states are bound by federal law. In addressing the governor and legislature’s actions to prevent integration, the United States Supreme Court said: “No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.” Cooper, 358 U.S. at 18 (emphasis added).
¶ 6. As noted, the Supreme Court, as the ultimate interpreter of the U.S. Constitution, has found that the Constitution provides same-sex couples the right to marry. As an elected member of this Court, the politically expedient (and politically popular) thing for me to do is to join my colleagues’ separate statements and quote the dissenters in the Obergefell case. However, if I did, in my opinion, I would be in violation of the oath of office I now hold.
CHANDLER, J., JOINS THIS SEPARATE WRITTEN STATEMENT. IN THE SUPREME COURT OF MISSISSIPPI.
DICKINSON, Presiding Justice,
objecting to the order with separate written statement:
¶ 1. Without disclosing that it is doing so — and with no legal analysis whatsoever — the majority reverses the chancellor, strikes down Mississippi’s constitutional and statutory bans on same-sex marriage, and orders the chancellor, on remand, to enter a judgment in favor of the appellant. This order’s claim that “no contested issues remain for resolution” is wholly and demonstrably inaccurate. Accordingly, I respectfully object.
¶ 2. When the appellant, Lauren Beth Czekala-Chatham, — who married a person of her same gender in California pursuant to California law — petitioned the Chancery Court of DeSoto County, Mississippi, for a divorce, the chancellor dismissed her petition because same-sex marriage is both statutorily[1] and constitutionally[2] prohibited in Mississippi.
¶ 3. Czekala-Chatham appealed, asking this Court to declare that Mississippi’s constitutional and statutory prohibitions of same-sex marriages violate the United States Constitution. The Mississippi Attorney General intervened to defend this State’s laws, but while the appeal was pending here, the United States Supreme Court handed down Obergefell v. Hodges, holding that, under the United States Constitution, same-sex couples possess a fundamental right to marry.[3] The Attorney General has informed us that, based on the Obergefell decision, he now agrees that Mississippi’s ban on same-sex marriage is unconstitutional, and he has asked us to enter judgement in Czekala-Chatham’s favor.
¶ 4. Because of the Attorney General’s capitulation, the order says that “no contested issues remain for resolution,” and that the chancellor should reverse himself simply because the Attorney General no longer wishes to defend Section 263A of the Mississippi Constitution. I do not agree. Czekala-Chatham has placed a substantial constitutional issue before us, and we should decide it here. By issuing this objection to the majority’s actions today, I wish to go on record as stating that my vote on this, or any other issue is not *190 controlled by the views of the Attorney General.
¶ 5. I agree with and join Justice Coleman’s thoughtful objection to this order, and I believe that it demonstrates the need for this Court to consider this case on its merits. Indisputably, the Obergefell majority has announced that persons of the same gender have a fundamental right to marry. This holding directly conflicts with this State’s same-sex maxriage ban, and it is our responsibility to address the issue.
¶ 6. The Obergefell dissenters have raised a question which — as Justice Coleman explains — implicates our oath of office as justices of this Court: Did the Oberge-fell majority engage-in legislative • enactment, rather judicial interpretation, - exceeding the-.power conferred upon it by the United States Constitution? As demonstrated below» there is substantial support for Justice Scalia’s view that, the Obergefell majority holding “is a .naked judicial claim to legislative — indeed, super-legislative— power; a claim fundamentally at odds with our system of government”;[4] and Justice Thomas’s view that the majority opinion “exalts judges at the expense of the People from whom they derive their authority,”[5] and Justice Alito’s view that the Obergefell majority’s decision “usurps the constitutional right of the people to decide,” and “will be used to vilify Americans who are unwilling. to assent to the new orthodoxy”; [6] and Chief Justice Roberts’s view that “the Constitution leaves no doubt” that the majority’s “pretentious” opinion is incorrect.[7]
¶ 7. Indeed, separation of powers is a fundamental component of American government. Article III, Section 1 of the United States Constitution states that “[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and- establish.” It is from that judicial power that the United States Supreme Court derives its role to interpret the United States Constitution.
¶ 8. And while it is true that the Supremacy Clause of the United States Constitution obligates state courts to follow the United States Supreme Court’s constitutional interpretations, even when they disagree with those interpretations,[8] there is substantial support from legal scholars that state courts are not required to recognize as legitimate legal authority a Supreme Court decision that is in no way a constitutional interpretation, but rather is a legislative act by a judicial body that is— as Chief'Justice Roberts put it — a decision that “has no basis in the Constitution or [United States Supreme Court] precedent.” [9]
¶ 9. Other arguments have been advanced in other contexts that it is possible for the Supreme Court — the body tasked with interpreting the United States Constitution — to exceed the power granted to it under that document, and to think otherwise is to endorse judicial tyranny. One example of this view, for instance, is that if the Supreme Court concluded that gun violence impedes the flow of interstate commerce, leading it. to interpret the Commerce Clause as granting the Congress the power to confíscate all privately owned *191 guns, who would feel bound to follow it? This absurd hypothetical, some believe, debunks any notion that it is impossible for the Supreme Court to exceed its authority. So in the context of today’s case, the question becomes whether it has done so in Obergefell.
¶ 10. This question and these arguments should be addressed by this Court, allowing us to decide them on behalf of the people of the State of Mississippi. We have been deprived of that opportunity by the majority’s preemptive treatment of the Attorney General’s views.
¶ 11. As stated above, numerous noted legal publications and scholars have advanced arguments that the Obergefell decision crossed the line of legitimate constitutional interpretation, and that state courts should not follow it. For instance, the following legal scholars have gone on record as suggesting that “state officeholders” should “refuse to accept Obergefell as binding precedent:”
Robert. P. George, McCormick Professor of Jurisprudence, Princeton University, Founder of American Principles Project;
Stephen H. Balch, Director, Institute for the Study .of Western Civilization, Texas Tech University;
Lucas E. Morel, Class of 1960 Professor of Ethics and Politics, Washington and Lee University;
William Barclay Allen, Dean Emeritus, Michigan State University;
Scott FitzGibbon, Professor of Law, Boston College Law School;
John S. Baker, Jr., Professor Emeritus of Law, Louisiana- State University Law Center;
Gerard V. Bradley, Professor of Law, University of Notre Dame;
Christopher Wolfe, Professor of Politics, University of Dallas;
Robert Koons, Professor of Philosophy, University of Texas at Austin;
Colleen ■ Sheehan, Professor of Political Science, Villanova University;
Carol M. Swain,' Professor of Political Science and Law, Vanderbilt University;
Hadley P. Arkes, 'Edward N.' Ney Professor of Jurisprudence Emeritus,: Amherst College;
Carson Holloway, Associate Professor of Political Science, University of Nebraska, Omahá;
Angelo Codevilla, Professor Emeritus, Boston University;
John C. Eastman, Henry Salvatori Professor of Law & Community Service, Dale E. Fowler School of Law at Chapman University;
George W. Dent, Jr., Professor of Law, Case Western Reservé University School of Law;
Paul Moreno, William and Berniece Grewcock Chair in U.S. Constitutional History, Hillsdale College;
Lynri D. Wardle, Bruce C. Hafen Professor of Law, J. Reuben Clark Law School, Brigham Young University;
Ralph A. Rossum, Salvatori Professor of American Constitutionalism, Claremont McKenna College;
Stephen M. Krason, Professor of Political Science and Legal Studies, Franciscan University of Steubenville;
Adam J. MacLeod, Associate Professor of Law, Thomas Goode Jones School of Law, Faulkner University;
Peter W. Wood, President, National Association of Scholars;
Mark T. Mitchell, Professor of Government, Patrick Henry College;
Teresa S. Collett, Professor of Law, University of St. Thomas School of Law;
*192 Jay Bergman, Professor of History, Central Connecticut State University; Robert L. McFarland, Associate Dean of External Affairs and Associate. Professor of Law, Thomas Goode Jones School of Law, Faulkner University; Gary D. Glenn, Distinguished Teaching Professor Emeritus, Northern Illinois University;
Bradley P. Jacob, Associate Professor of Law, Regent University School of Law;
Raymond B. Marcin, Professor of Law Emeritus, The Catholic University of America;
Matthew Spalding, Associate Vice President and Dean, Allen P. Kirby Center for Constitutional Studies and Citizenship, Hillsdale College;
James A. Davids, Associate Professor of Law, Regent University School of Law.[10]
¶ 12. And, according to an article coauthored by Herbert W. Titus, who taught constitutional law for more than a quarter of a century and concluded his academic career as the Founding Dean of Regent Law School:
There is simply, no other way to say it.
The Supreme Court’s decision today redefining marriage to include couples of the same sex is wholly illegitimate and unlawful. A nullity. Worthy only to be disobeyed.
Anyone who says otherwise — that the rule of law requires recognition of same-sex marriage — is committing a fraud. And any State official — like Governor Robert Bentley of Alabama — who says that his oath of office requires unconditional obedience to the Supreme Court’s mandate to issue same-sex couples licenses to marry is mistaking his oath to the Constitution as if it were an oath of absolute obedience to five justices who happen to be sitting on the nation’s highest court.[11]
¶ 13. These scholars do not appear to question the efficacy of Marbury v. Madison ⅛ basic premise that the United States Supreme Court possesses the power to resolve conflicts between the United States Constitution and other laws.[12] Rather, they posit that it indeed is possible for the United States Supreme Court to render an opinion so devoid of constitutional analysis or' reason, that it exceeds not only the authority the Supreme Court granted itself in Marbury, but also the Court’s authority under Article III' of the United States Constitution.
¶ 14. I firmly believe that, rather than declaring that there are no issues for us to decide, we'should address these issues and adjudicate the issue presented by Czekala-Chatham, which would allow us to analyze the troubling points raised by the Oberge-fell dissenters. By failing to do so, the majority does a disservice to the Bench, the Bar, and the citizens of this state.
¶ 15. Finally, a few words about Justice Pierce’s concerns with his oath of office, and with Justice. Coleman’s and my state *193 ments opposing today’s order. First, Justice Pierce incorrectly perceives that Justice Coleman and I have concluded, on the merits, that following Obergefell would violate our oath of office. We have done nothing more than to point out that the case before us presents substantial issues that this Court should decide, one way or the other, rather than disposing of the case by an order that ducks the issue. I respect Justice Pierce’s right to decide for himself what his oath of office requires him to do. That is between him and God, to whom he swore the oath. But I cannot agree with his view that my oath of office requires me blindly to follow any decision handed down by the Supreme Court, no matter how absurd, or disconnected it may be from the Constitution. I believe my oath of office imposes upon me a duty to examine those decisions to make sure they indeed are constitutional interpretations, rather than — as the Obergefell dissent concluded — an exercise in judicial will that, as Chief Justice Roberts put it, “has no basis in'the Constitution or [United States Supreme Court] precedent.”[13]
¶ 16. My oath of judicial office — as Justice Pierce, recognizes in his statement— requires me to decide cases agreeably to the Constitution. I swore no oath to follow decisions that have “no basis in the Constitution.” And so long as the Supreme Court interprets the Constitution, I will recognize its interpretations as the supreme law of the land, and I will follow them, even where I disagree with them.[14] But when five members of the Court hand down an order that the other four members believe has “no basis in the Constitution,” a substantial question is presented as to whether I have a duty to follow it. And I believe we have a duty to address that question. But, instead of addressing the question on its merits, the majority chooses to dispose of .the case by entering an order that incorrectly claims that, because the Attorney General agrees with Czekala-Chatham, we have nothing to decide.
¶ 17. Also, it occurs to me that United States Supreme Court justices are not above the law. And if Justice Pierce’s view of the judicial oath of office is correct — that is to say, if justices who do not follow Supreme Court precedent are in violation of the judicial oath — then every United States Supreme Court justice violates his or her oath of office every time he or she dissents to binding precedent — that is, unless Justice'Pierce can direct me to some loophole in Marburg v. Madison that applies only to Supreme Court justices.
¶18. Applying Justice Pierce’s logic, dissenting opinions would be allowed only for issues of first impression. But for Constitutional issues that have been decided and have become the law of the land, there could be no dissent, because, applying Justice Pierce’s view, a justice who diságrees would be required by his or her oath either to garner enough votes to reverse the precedent, or to join it. For a United States Supreme Court justice to do otherwise — that is, to vote contrary to settled, binding Supreme Court precedent— would constitute a violation of that justice’s oath of office.
¶ 19. For these reasons stated above, I do not join this order. I would decide this case on the merits.
COLEMAN, J., JOINS THIS SEPARATE WRITTEN STATEMENT.
KING, Justice,
objecting to the order with Separate Written Statement:
¶ 1. While I am satisfied that the right result for Czekala-Chatham has been *194 reached, I believe this Court does a great disservice to the jurisprudence of this State by reaching such result in an order, rather than issuing a precedential opinion. Consequently, I object to issuing this decision via order.
¶ 2, Mississippi Rule of Appellate Procedure 35-A provides that this Court “may write opinions, on all cases heard” by this Court. M.R.A.P. 35-A(a). In cases affirming the trial court,' the Court may write an opinion “if a majority of justices deciding the casé determine that a written opinion will add to the value of the jurisprudence of" this state, or be useful to the parties or to the trial court,”.' M.R.A.P. 35-A(a). While we reverse the trial court in this case, thus.the provision in the rule regarding value to the jurisprudence of the State is not directly applicable, it certainly follows that an opinion reversing the trial court will add to the value of the jurisprudence of the state, be useful to the parties, and be useful to the .trial court. Indeed, implicit in the rule clarifying that judgments affirming trial courts may be done with written opinion is that judgments reversing trial courts should be done via written opinion. When a judgment of a trial court is affirmed, one may assume that the trial, court’s rationale was likely correct. When it is reversed, the State, the bar, the trial court and other courts of the State, and the parties need to know why and how to correct the error in the future.
¶3. This Court has previously issued written opinions even when both parties jointly requested dismissal. Recently, in Estate of St. Martin v. Hixson, 145 So.3d 1124 (Miss.2014), the parties filed a joint motion to withdraw the petition for writ of certiorari pursuant to Mississippi Rule of Appellate Procedure 42(b), which addresses dismissal of an appeal. While a voluntary dismissal of an appeal will usually be granted, to do so is at the discretion of the Court, and the Court may “have special reasons to refuse to grant the motion for voluntary dismissal.” M.R.A.P. 42 cmt.; Wolf v. Miss. Valley Trust Co., 130 Miss. 144, 93 So. 581 (1922) (“The right of an appellant to dismiss his appeal is not absolute, and can be exercised only by leave of the court, which will usually be granted unless 'special reasons be shown for refusing it.”) (emphasis added). In Estate of St. Martin, the joint motion to withdraw the petition was summarily dismissed as “not well taken.” Without showing any special reason as to why the Court would refuse to dismiss the case, the Court then issued an opinion in Estate' of St. Martin. Unlike Estate of St. Martin, in which the Court did not articulate or show any .special circumstances to refuse dismissal, multiple special circumstances exist in the present case that necessitate that we'issue an opinion rather than an order.[15]
¶4. Several reasons exist to issue a precedential opinion in this case, rather than an order, as this case is important to the jurisprudence of the State. . First, an authoritative opinion from this Court could foreclose or shorten much costly and time-consuming litigation. See, e.g., Complaint for Declaratory and Injunctive Relief, Campaign for Southern Equality v. Miss. Dep’t of Human Servs., No. 3:15cv578DPJ-FKB (S.D.Miss. Aug. 12, 2015) (challenging Mississippi Code Section 93-17-3(5), which prohibits adoption by couples of the same gender). Second, the United States Supreme Court did not give any .specific guidance on same-sex divorce, which is the subject of this case. *195 Clarifying the applicability of Obergefell[16] to divorce cases would provide guidance to the chancery courts of this State. Third, the Supreme Court did not hold the Mississippi constitutional provision and statute unconstitutional in Obergefell.[17] Neither of the Mississippi laws was before the Supreme Court in Obergefell; rather, the Supreme Court directly held unconstitutional only the laws before it: those of the states of Michigan, Ohio, Kentucky, and Tennessee. Obergefell, 135 S.Ct. at 2605 (“[T]he State laws challenged by the Petitioners' in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.”) (emphasis added). The logic and broad, sweeping language of the opinion in Obergefell certainly warrant the interpretation that all such laws are unconstitutional; however, the specific laws of Mississippi were not directly so held by the United States Supreme Court, as the Court did not have the opportunity to consider our laws. Thus, an authoritative opinion in this case would benefit the jurisprudence of the state by providing.authoritative guidance to our chancery courts in this matter and by having a state authority hold Mississippi Code Sections 93-1-1 and 93-1-3, and Mississippi Constitution Article 14, Section 263A unconstitutional.[18]
¶ 5. Why then would this Court choose to issue an order in this case, rather than an opinion? In making such a decision, I note that the Court could have reached this conclusion after oral argument in the case. Instead, it chose to seek additional briefing on an issue that in no way could have .led to a resolution of the case. Further, in issuing an order rather than an opinion, it is clear that this Court’s concern is not- a speedy resolution of the case. Obergefell was issued on June 26, -2015. If a speedy resolution was the concern,' this Court could have issued an order much sooner than November 2015.[19] The United States Court of Appeals for the Fifth Circuit managed to issue not one, but three published opinions on this issue on July 1, 2015, mere days after Obergefell was handed down. Campaign for Southern Equality v. Bryant, 791 F.3d 625 (5th Cir.2015); Robicheaux v. Caldwell, 791 F.3d 616 (5th Cir.2015); De Leon v. Abbott, 791 F.3d 619 (5th Cir.2015). In the Mississippi -case, the State, as here, conceded the issue, yet the Fifth Circuit still found it appropriate to affirmatively hold in a published opinion that the injunction holding the Mississippi laws unconstitutional was correct. Campaign for Southern Equality, .791 F.3d at 627. What then *196 can possibly be the purpose of a summary order rather than an authoritative opinion on a case so important to the jurisprudence of this state?
¶ 6. I believe that we should issue a simple opinion on this issue, and I would do so as follows:
¶ 7. In this divorce action, the chancery court dismissed the case for lack of subject matter jurisdiction. It found that Mississippi’s laws excluding same-sex couples from civil marriage in this State and forbidding recognition of same-sex marriages performed in other jurisdictions precluded it from hearing this divorce case. Czeka-la-Chatham appealed, with the State as intervenor defending the laws.. Finding the United States Supreme Court’s decision in Obergefell v. Hodges dispositive on this issue, we reverse the trial court and remand the case for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶ 8. On August 22, 2008, Lauren Beth Czekala-Chatham and Dana Ann Melan-con, both Mississippi residents at the time, were legally married in California. Czeka-la-Chatham and Melancon separated on July 30, 2010, in Southaven, Mississippi. On September 11, 2013, Czekala-Chatham, a resident of DeSoto County, Mississippi, filed for divorce in the Chancery Court of DeSoto County. Melancon filed a motion to dismiss, arguing that the chancery court could not recognize a same-sex marriage, thus could not grant a same-sex divorce, because her marriage to Czekala-Chatham was null and void in Mississippi. In response, Czekala-Chatham filed a “Combined Motion and Memorandum to Declare Mississippi Code Annotated § 93-1-1, § 93-1-3, and Mississippi Constitution Article XIV, § 263A (2004) Unconstitutional.”
¶ 9. On November 15, 2013, the State of Mississippi, through the Attorney General, moved to intervene in the case. The State opposed Czekala-Chatham’s attempt to have Mississippi Code Sections 93-1-1 and 93-1-3 and Mississippi Constitution Article 14, Section 263A declared unconstitutional.
¶ 10. On November 25-26, 2013, Czeka-la-Chatham and Melancon entered into an “Agreement for the Settlement of Property Rights.” Czekala-Chatham and Melan-con then immediately filed a “Joint Motion to Withdraw All Contest” in which Melan-con withdrew her motion to dismiss and the parties requested to proceed on the grounds of irreconcilable differences.
¶ 11. The chancery court held a hearing on the issue of the constitutionality of the statutes and constitutional provision on December 2, 2013. Because the parties had agreed on all other issues, the “only issue remaining [was] whether or not these statutory bans as applied to the parties prohibits a divorce from being entered by this Court.”
¶ 12. On December 6, 2013, the chancery court denied Czekala-Chatham’s motion to declare unconstitutional the Mississippi Code and Constitution provisions prohibiting same-sex marriage and the recognition thereof. The court consequently dismissed the divorce claims for lack of subject matter jurisdiction. Aggrieved, Czekala-Chatham appealed to this Court.
¶ 13. This Court held en banc oral argument on January 21, 2015. On February 24, 2015, this Court ordered the parties in this case to submit supplemental briefs on the following question:
In light of Mississippi’s public policy of not allowing or recognizing a marriage between two persons of the same gender, what rational basis supports the interpretation or application of a law or constitutional provision so as to prohibit Mississippi courts from granting a di *197 vorce to a Mississippi resident who was lawfully married in another state to a person of the same gender?
On June 26, 2015, the United States Supreme Court decided Obergefell v. Hodges, [20] which requires states both to issue marriage licenses to same-sex couples and to recognize same-sex marriages legally performed in other states. Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2607-08, 192 L.Ed.2d 609 (2015) (“The Court, in this decision, holds same-sex couples may exercise the fundamental right to marry in all States. It follows that the Court also must hold-and it now does hold-that there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another state on the ground of its same-sex character.”).

ANALYSIS

1. Standard of Review

¶ 14. This Court reviews questions of law de novo. Freeman v. State, 121 So.3d 888, 895 (Miss.2013). This case presents only questions of law.

2. Mississippi Law

¶ 15. In 1997, Mississippi enacted a statute that provides that “[a]ny marriage between persons of the same gender is prohibited and null and void from the beginning. Any marriage between persons of the same gender that is valid in another jurisdiction does not constitute a legal or valid marriage in Mississippi.” Miss.Code Ann. § 93-1-1 (Rev.2013); 1997 Miss. Laws, ch. 301, § 1. Moreover, “[a]ny attempt to evade Section 93-1-1 by marrying out of this state and returning to it shall be within the prohibitions of said section.” Miss.Code Ann. § 93-1-3 (Rev. 2013). In 2004, Mississippians voted to amend the Mississippi Constitution to prohibit same sex marriage. The section is entitled “Marriage defined as only between a man and a woman” and it states that
Marriage may take place and may be valid under the laws of this State only between a man and a woman. A marriage in another State or foreign jurisdiction between persons of the same gender, regardless of when the marriage took place, may not be recognized in this State and is void and unenforceable under the laws of this State.
Miss. Const, art. 14, § 263A. Thus, Mississippi law prohibits same-sex couples from entering into a valid civil marriage in this state, and it prohibits recognition of same-sex marriages performed in other jurisdictions.

3.Obergefell v. Hodges

¶ 16. Obergefell affirmatively recognizes that laws that exclude same-sex couples from civil marriage are unconstitutional. The Supreme Court held that marriage is a fundamental right. Obergefell, 135 S.Ct. at 2598-2604. It further found that laws prohibiting same-sex marriage, or otherwise excluding same-sex couples from civil marriage, implicated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Id. (“It is now clear that the challenged laws burden the liberty of same-sex couples, and it must be further *198 acknowledged that they abridge central precepts of equality.”). The Court held “that same-sex couples may exercise the fundamental right to marry .... and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.” Id at 2604-05.
¶ 17. The Court further addressed “whether the Constitution requires States to recognize same-sex marriages validly performed out of State.” Id at 2607. It noted that “if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.” Id. “It follows that the Court also must hold— and it now does hold — that there is. no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character.” Id at 2607-08.
¶ 18. Pursuant to the Supreme Court’s ruling in Obergefell, we find that Mississippi Code Sections 93-1-1 and 93-1-3, and Mississippi Constitution article 14, Section 263A, which exclude same-sex couples from civil marriage and refuse to recognize a lawful same-sex marriage performed in another state on the ground of its same-sex character, are unconstitutional. Thus, to the extent the chancery court declined to hear this divorce case based on the ground of its same-sex character, it is reversed.
CONCLUSION
¶ 19. We find the bans on same-sex marriage and the recognition thereof found in Mississippi Code Sections 93-1-1 and 93-1-3, and the Mississippi Constitution article 14, Section 263A, unconstitutional, because Mississippi’s bans on same-sex marriage and its recognition violate the Fourteenth Amendment, as the United States Supreme Court confirmed in Obergefell. The trial court may not decline to recognize Czekala-Chatham’s marriage for the purposes of this divorce case based on its same-sex character, as states may no longer refuse to recognize valid marriages performed out of state based on the same-sex character of that marriage.
¶ 20. With the above simple, straightforward opinion, I would reverse the trial court and find that it has subject-matter jurisdiction to hear Czekala-Chatham’s divorce case, and remand the case for further proceedings. Thus, while I do not object to the outcome of the Court’s order as it relates specifically to Czekala-Chat-ham, I strongly object to the procedure this Court employs to achieve this result.
KITCHENS, J., JOINS THIS SEPARATE WRITTEN STATEMENT.
COLEMAN, Justice,
objecting to the order with separate written statement:
111. Because today’s order — as both Presiding Justice Dickinson and Justice King write — leaves undecided important issues of Constitutional interpretation, I disagree with it. Four United States Supreme Court justices wrote dissents to the majority opinion in Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2612, 192 L.Ed.2d 609 (2015), and the dissents are remarkable and unprecedented because, as more fully set forth below, the four dissenters each wrote that the Obergefell majority acted without any Constitutional grounds. Rather than entering an order that sweeps such a striking thing under the rug and avoids difficult questions, the Court should issue opinions and address, for the benefit of the voters of Mississippi who approved the state’s same-sex marriage ban, exactly why, if at all, their will has been thwarted. The voters should *199 know about the sharp divide on the United States' Supreme Court regarding the Constitutional authority — or lack thereof — for the Obergefell Court to do what it has done.
¶ 2. My intent in ‘Writing the instant statement is to illustrate -that a debate exists as 'to whether the Obergefell Court had any right under the Constitution to do what it did, and that the possibility that the United States Supreme Court has acted unconstitutionally strikes at the very center of how those of us 'sworn to do our jobs agreeably to the Constitution of the United States must strive to follow our oaths. The instant statement is not, whether others might say that it is or not, about the issue of to what extent, if any, governments will or must legally recognize same-sex relationships. I would be writing the same statement and expressing the same concerns if faced with a United States Supreme Court decision that held the Constitution of the United States required every household in America to own a giraffe.
¶ 3. I recognize that I can do no better job than the four Obergefell dissenters in showing where the Obergefell Court erred or strayed from legitimate constitutional analysis. Any attempt of mine to do so would be, at best, repetitive. However, I will take the time to point out some of what they wrote that explains my position today. The Chief Justice of the United States, in dissent, wrote, “The majority’s decision is an act of will, not legal judgment. The right it announces has no basis in the Constitution or this Court’s precedent.” Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2612, 192 L.Ed.2d 609 (2015) (Roberts, C.J., dissenting) (emphasis added). In other words, the Chief Justice of the United States believes the Court has acted without constitutional grounds.
¶ 4. It makes sense that the Chief Justice would scold his Court for acting without a basis in the authority of the document that creates it if he believes such to be the case. It is absurd to think that the President of- the United States, the Congress of- the United States, the various federal agencies, the governors of the fifty states, the legislatures of the fifty states, the courts of the-fifty states, and the innumerable agencies of the fifty states all can act in ways contrary to the Constitution,. but that five or more justices of. the. Supreme Court, acting together, never can. In describing the anticipated power.of-the judiciary under the yet-to-be-adopted Constitution of the United States, Alexander Hamilton wrote,
Whoever attentively considers the different departments of power must perceive, that,. in a government in which they are separated from each other, the judiciary,, from the nature of its functions, will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them. .
The Federalist No. 78 (Alexander Hamilton). - From Hamilton’s. modest ideas of court power, we have evolved to a point where the Supreme. Court-changeg, adds to, omits from, and amends the Constitution at the will and pleasure of. a majority of its members. . -
It can be tempting for judges to .confuse our own- preferences with the requirements of the law. But as this Court has been reminded throughout our history, the Constitution “is made for people of fundamentally differing views,” Lochner v. New York, 198 U.S. 45, 76, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J., dissenting). Accordingly, “courts are not concerned with the wisdom or policy of legislation.” Id. at 69, 25 S.Ct. 539, 49 L.Ed. 937 (Harlan, J., dissenting). *200 The majority today neglects that restrained conception of the judicial role. It seizes for itself a question the Constitution leaves to the people, at a time when the people are engaged in a vibrant-debate on that question. And it answers that question based not on neutral principles of constitutional law, but on its own “understanding of what freedom is and must become.”
Obergefell, 135 S.Ct. at 2612 (Roberts, C.J., dissenting). How naive — and to some no doubt nostalgically so — now reads the continuation of Hamilton’s writing from above.
The Executive not only dispenses the honors, but holds the sword of the community. ' The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen- are to be regulated. The judiciary, on the contrary, has no influ-encé over either the sword or the purse; no direction either -of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL, but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments.
The Federalist No. 78 (Alexander Hamilton) (emphasis added). Hamilton proved, however, prescient when he also wrote, “For I agree, that ‘there is no liberty, if the power of judging be not separated from the legislative and executive powers.’ ” The Federalist No. 78 (Alexander Hamilton). As Chief Justice Roberts also intimates, in Obergefell, 135 S.Ct. at 2616-2617, we find ourselves at the point about which Justice Curtis warned us in his dissent in Dred Scott v. Sandford, 60 U.S. 393, 19 How. 393, 15 L.Ed. 691 (1856).
To engraft on any instrument a substantive exception not found in it, must be admitted to be a matter attended with great difficulty. And the difficulty increases with the importance of the instrument, and the magnitude and complexity of the interests involved in its construction. To allow this to be done with the Constitution, upon reasons purely political, renders its judicial interpretation impossible — because judicial tribunals, as such, cannot decide upon political considerations. Political reasons have not the requisite certainty to afford rules of juridical interpretation. They are different in different men. They are different in the same men at different times. And when a strict interpretation of the Constitution, according to the fixed rules which govern the interpi-etation of laws, is abandoned, and the theoretical opinions of individuals are allowed to control its meaning, we have no longer a Constitution; we are under the government of individual men, who for the time being have power to declare what the Constitution is, according to their own views of what it ought to mean. When such a method of interpretation of the Constitution obtains, in place of a republican Government, with limited and defined powers, we have a Government which is merely an exponent of the will of Congress; or what, in my opinion, would not be preferable, an exponent of the individual political opinions of the members of this court.
Dred Scott, 60 U.S. at 620-621.
¶ 5. In his Obergefell dissent, Justice Scalia writes,
So it is not of special importance to me what the law says about marriage. It is of overwhelming importance, however, who it is that rules me. Today’s decree says that my Ruler, and the Ruler of 320 million Americans coast-to-coast, is a majority of the nine lawyers on the Supreme Court. The opinion in these cases is the furthest extension in fact— *201 and the furthest extension one can even imagine — of the Court’s claimed power to create “liberties” that the Constitution and its Amendments .neglect to' mention. This, practice-of constitutional revision by an unelected committee of nine, always accompanied (as it is today) by extravagant praise of liberty, robs the People of the most important liberty they asserted in the Declaration of Independence and won in the Revolution of 1776: the freedom to govern themselves.
Obergefell, 135 S.Ct. at 2627 (Scalia, J., dissenting). While I cannot join in Justice Scalia’s apathy regarding the nature of marriage, see Sherif Gergis, Robert P. George, & Ryan T. Anderson, What is Marriage, 34 Harv. J.L. & Pub. Pol’y 245 (Winter 2011), I am deeply concerned with pronouncements from the United States Supreme Court, my own oath of office taken as a member of the subordinate Mississippi Supreme Court, and what — if anything — I should do when there may be conflict between the two.
¶ 6. When I have traveled to New Orleans, I have noticed signs placed at various places around town, presumably by a street artist whose identity is unknown to me, that read, in simple black and white, “Think that you might be wrong.” In one of the more memorable, poignant lines of his Obergefell dissent, Chief Justice Roberts wrote, “Just who do we think we are?” Obergefell, 135 S.Ct. at 2612 (Roberts, C.J., dissenting). I serve on a court inferior to the United States Supreme Court, and I know it, and I would not even raise the chance of refusing to follow a Supreme Court opinion without deep reflection, study, and thought. However, no court should be elevated above the Constitution itself, and if the Supreme Court of the United States has done something it has no constitutional basis for doing — as forcefully argued by the Obergefell dissenters, then those of us who sit below it must ask ourselves what, if anything, it means.
¶7. No inferior judge, to my knowledge, has ever taken an oath of fealty to the United States Supreme Court, but here we take an oath of office prescribed by: the Constitution of Mississippi. When doing' so, we Mississippi judges swear to “faithfully and impartially discharge and perform all the duties incumbent upon [us] ... according to the best of [our] ability and understanding, agreeably to the Constitution of the United States and the Constitution and laws of the State of Mississippi.” Miss. Const, art. 6, § 155.
¶ 8. For state court judges who believe the Constitution really does mean whatever a majority of the Supreme Court say it means, neither Obergefell nor any other possible ruling can be a source of much consternation. Such judges can never be presented with a Supreme Court opinion they would not placidly follow. However, for state court judges across the United States who agree with the Obergefell dissenters that the Obergefell decision is an act of will and not constitutional interpretation, the crisis of conscience. could be very real and visceral.
¶ 9. In Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), the United States Supreme Court issued an opinion that was not only unanimous, but also coauthored by all nine justices. Therein, -the Court confronted claims by the Governor and Legislature of Arkansas that they would, not be bound by the Court’s decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Cooper, 358 U.S. at 4, 78 S.Ct. 1401. In addressing the rebellion of Arkansas’s Governor and Legislature, the Supreme Court wrote the following:
What has been said, in the light of the facts developed, is enough to dispose of the case. However, we should answer *202 the premise of the actions of the Governor .and Legislature that they are not bound by our holding in the Brown case. .It is necessary only to recall some basic constitutional propositions which are settled doctrine.
Article VI of the Constitution makes the Constitution the “supreme Law of the Land.” In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as “the fundamental and paramount law of the nation,” declared in the notable case of Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60, that “It is emphatically the province and duty of the judicial department to say what the law is.” This decision declared the basic principle that the federal judiciary is supreme in the exposition' of the law of the Constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system. It follows that the interpretation of the Fourteenth Amendment enunciated by this Court in the Brown case is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States “any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” Every state legislator and executive and judicial officer -is solemnly committed by oath taken pursuant to Art. VI, ¶ 3 “to support this Constitution.” Chief Justice Taney, speaking for a unanimous Court in 1859, said that this requirement reflected the framers’ “anxiety to preserve it [the Constitution] in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State.” Ableman v. Booth, 21 How. 506, 524, 16 L.Ed. 169. No state legislator or executive or judicial, officer can war against the Constitution without violating his undertaking to support it. Chief Justice Marshall spoke for a unanimous Court in saying that: “If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery....” United States v. Peters, 5 Cranch 115, 136, 3 L.Ed. 53 [(1900)]. A Governor who asserts a power to nullify a federal court order is similarly restrained. If he had such power, said Chief Justice Hughes, in 1932, also for a unanimous Court, “it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases.” Sterling v. Constantin, 287 U.S. 378, 397-398, 53 S.Ct. 190, 195, 77 L.Ed. 375.
Cooper, 358 U.S. at 17-19, 78 S.Ct. 1401.
¶ 10. As quoted above, Cooper is clearly founded on the underlying principle that the U.S. Constitution means what a majority of the Supreme Court of the United States says it means — whatever that may be. Such a conclusion is not necessarily true and should be subject to questioning. In an article that presaged much of what is implicated by the four Obergefell dissenters by sixteen years, Robert Lowry Clinton wrote as follows:
During the last forty years, however, the Supreme Court has — with increasing frequency, intensity, and success— pressed its claim to be the primary, even exclusive, organ of constitutional interpretation in the United States. The first assertion of this claim came in 1958, in Cooper v. Aaron (the Little Rock school desegregation case). The Court declared the federal judiciary to be “supreme in the exposition of the law of the *203 Constitution,” effectively equating the Court’s own interpretations with the Constitution itself. The legal peg supporting this maneuver was the Court’s assertion that its own constitutional rulings possessed status as the.“supreme law” under Article VI, .alongside constitutional provisions, national laws, and federal treaties. The Cooper Court also wrongly cited Marbury v. Madison as precedent for its newly discovered “ultimate” interpretive authority. Because of the Cooper decision and its more recent progeny, many have come to believe that in Marbury the Court really had declared itself the primary organ of constitutional interpretation. This belief is a useful fiction for a Court determined to establish its ovm constitutional hegemony, for it allows the Court to claim the support of the great Chief Justice John Marshall for its assertion of power. Such doctrinal support is essential in a legal system with common law roots and stare decisis pretensions.
But as the Court’s own record of precedents demonstrates, its post-1958 conception of American constitutional history is fundamentally wrong. A limited form of judicial review was already established by 1800, but only for relatively “clear cases.” Marbury did not alter this, but rather established a clear precedent for the Court’s power to disregard congressional laws in cases “of a judiciary nature” — cases in which judicial functions were threatened by application of a questionable statutory provision. Mar-bury established only that the judiciary would play an important role in constitutional interpretation, not that it would play the ultimate role. After Marbury the Court did not invalidate another act of Congress until Dred Scott v. Sandford in 1857. It would not cite Marbury in support of any kind of constitutional judicial review until the 1880s, and not in support of broad-gauged review until the 1950s.
Robert Lowry Clinton, How the Court Became Supreme, First Things (January 1999).
¶ 1Í. An application of reductio ad ab-surdum demonstrates why the statement — that the Constitution means whatever a majority of the Supreme Court says it means — cannot always and universally be true. A decision by the Supreme Court holding, as I imagine above, that substantive due process requires each household to own a giraffe could find no constitutional support. In a similar vein, one can consider a hypothetical opinion from the Supreme Court of the United States that the Fourteenth Amendment’s' Due Process Clause requires that each Justice on the Court receive a five-million-dollar annual salary.
¶ 12. What if the Supreme Court started, without.any actual case or parties or controversy before them, issuing sua sponte opinions.on other political matters as to which a majority of the Court believe should be decided one way or the other? For example, what.should we do if the Supreme Court of’ the- -United States held — again sua sponte — that the Constitution requires the Congress to declare war on -countries that do not provide an accused the right to a jury trial? What if five justices on the United States Supreme Court serve upon Congress and the President an opinion and mandate that hold the Constitution requires all members of fill-in-the-blank ethnic group to be removed to work camps? If the Constitution truly means what five Supreme ■ Court justices say it means, and no other soul in the country has a right-to dispute them, what is the limit on its power?
¶ 13. The above examples are absurd, but the absurdity shows that the conclu *204 sion — that the Constitution means whatever a majority of the Supreme Court says it means — cannot always be true. The question for us then becomes, at what point does it become untrue?
¶ 14. Unlike Brown, which was a unanimous decision, in Obergefell, four of the nine justices — including the Chief Justice — disagreed and much more. All four dissenters, in so many words, called the Obergefell majority an exercise of judicial power that lacked constitutional backing.[21] Obergefell, 135 S.Ct. at 2612 (“The right it announces has no basis in the Constitution.”) (Roberts, C.J., dissenting); Obergefell, 135 S.Ct. at 2629 (The Oberge-fell majority “is a naked judicial claim to legislative — indeed, super-legislative— power; a claim fundamentally at odds with our system of government”) (Scalia, J., dissenting); Obergefell, 135 S.Ct. at 2631 (“The Court’s decision today is at odds not only with the Constitution....”) (Thomas, J., dissenting); Obergefell, 135 S.Ct. at 2640 (The Constitution does not dictate to the States what to do about same-sex marriage.) The Cooper Court wrote that Mar-burg v. Madison “declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system.” If its exuberant proclamation of self-empowerment is true, then so be it. None of us has a thing in the world to worry about. On the other hand, many may agree that the Constitution as interpreted by the Supreme Court is the law of the land, but as all four dissenters seem to agree, the Obergefell decision had nothing to do with interpreting the Constitution. See, e.g., Obergefell, 135 S.Ct. at 2626 (Roberts, C.J., dissenting) (writing that the Constitution “had nothing to do with” the Obergefell decision).
¶ 15. If the four dissenters are correct, then the United States Supreme Court in Obergefell arguably has done something it has no power under the Constitution of the United States to do. “This is a naked judicial claim to legislative — indeed, super-legislative — power; a claim fundamentally at odds with our system of government.” Obergefell, 135 S.Ct. at 2629 (Scalia, J., dissenting). If such is the case, there may be lower-court judges who cannot both (a) follow Obergefell and (b) “faithfully and impartially discharge and perform all the duties incumbent upon [them] ... agreeably to the Constitution of the United States_” Miss. Const, art. 6, § 155. The two would be mutually exclusive.
DICKINSON, P.J., JOINS THIS SEPARATE WRITTEN STATEMENT.

. Miss.Code Ann. §§ 93-1-1, 93-1-3 (Rev. 2013).

. Miss. Const, art. 14, § 263A.

. Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2612, 192 L.Ed.2d 609 (2015).

. Id. at 2629 (Scalia, J., dissenting).

. Id. at 2631 (Thomas, J., dissenting).

. Id. at 2643 (Alito, J., dissenting),

. Id. at 2616, 2626 (Roberts, C.J., dissenting).

. See Ableman v. Booth, 62 U.S. 506, 517-18, 21 How. 506, 16 L.Ed. 169 (1858).

. Obergefell, 135 S.Ct. at 2612 (Roberts, C.J., dissenting).

. Statement Calling for Constitutional Resistance to Obergefell v. Hodges, The American Principles Project (October 8, 2015), https:// americanprinciplesproject.org/founding- : principles/statement-calling-for-constitutional-resistance-to-obergefell-v-hodges% AF/ (last visited Nov. 3, 2015).

. Herbert W. Titus & William J. Olson, Obergefell v. Hodges: Illegitimate, Unlawful, and a Fraud on the American People, Western Journalism, June 26, 2015, http://www. westernjournalism.com/obergefell-v-hodges-illegitimate-unlawful-and-a-fraud-on-the-american-people/ (last visited Nov. 3, 2015).

. Marbury v. Madison, 5 U.S. 137, 178, 1 Cranch 137, 2 L.Ed, 60 (1803).

. Obergefell, 135 S.Ct. at 2612 (Roberts, C.J., dissenting).

. See U.S. Const, art. VI.

, It is true that the issue in this case was conceded, rather than being the subject of a motion to dismiss, but that seems to be a difference without distinction in this particular case.

. Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015).

. Indeed, these provisions were "held” unconstitutional by Campaign for Southern Equality v. Bryant, 64 F.Supp.3d 906 (S.D.Miss.2014), aff'd by 791 F.3d 625 (5th Cir.2015), which is persuasive, but not controlling, precedent for our state chancery courts. See generally Amanda Frost, Inferiority Complex: Should State Courts Follow Lower , Federal Court Precedent on the Meaning of Federal Law?, 68 Vand. L.Rev. 53 (Jan.2015).

. By holding these provisions unconstitutional, perhaps we could also avoid some of the embarrassment associated with the Mississippi miscegenation laws, which were not repealed until 1987,'twenty years after the United State Supreme Court held that Virginia’s miscegenation law, and implicitly, all miscegenation laws, were unconstitutional. 1987 Miss. Laws ch. 672; Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

.The United States Supreme Court decided Obergefell in the waning days of its 2014 term. The Court has now entered into its 2dl5 term, and this Court is handing down Our order on the one hundred and thirty-second day, not including June 26, 2015, after Obergefell was decided.

. On January 16, 2015, the United States Supreme Court had granted certiorari in several same-sex marriage cases and limited the grant of certiorari to the following questions: "1) Does the Fourteenth Amendment require a state to license a marriage between two people of the same sex? 2) Does the Fourteenth Amendment require a state to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-state?” Order List: 574 U.S., available at http://www. supremecourt.gov/orders/courtorders/011615 zr — f2q3.pdf (last visited November 2, 2015). The Obergefell decision answers these two questions.

. For this reason, I do not believe that, should one of the fifty states resist Obergefell, we would see another Cooper-type opinion authored by all nine justices telling those resisting Obergefell they do not follow their oaths.